United States District Court
Southern District of Texas
**ENTERED**
October 28, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JECO INVESTORS PARTNERSHIP,          §
                                     §
              Plaintiff,             §
                                     §
v.                                   §      CIVIL ACTION NO. H-20-2464
                                     §
PACIFIC LIFE INSURANCE COMPANY,      §
                                     §
              Defendant.             §

## MEMORANDUM OPINION AND ORDER

On June 10, 2020, Plaintiff JECO Investors Partnership ("Plaintiff") sued Pacific Life Insurance Company ("Defendant") in the 164th District Court of Harris County, Texas, for breach of contract and breach of the duty of good faith and fair dealing.[1] Defendant timely removed the action to this court.[2] On August 24, 2020, the court entered a Memorandum Opinion and Order (Docket Entry No. 13) granting Defendant's Motion for Judgment on the Pleadings ("Defendant's 12(c) Motion") (Docket Entry No. 3). Pending before the court is Plaintiff's Motion to Vacate Judgment and Grant Leave to Amend ("Plaintiff's Motion") (Docket Entry No. 15). For the reasons stated below, Plaintiff's Motion will be denied.

---

[1]Plaintiff's Original Petition and Request for Disclosures ("Original Petition'), Exhibit 2 to Defendant's Notice of Removal ("Notice of Removal"), Docket Entry No. 1-2, pp. 2, 6-7. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Notice of Removal, Docket Entry No. 1, p. 1.

## I.  <u>Factual and Procedural Background</u>

Defendant is an insurance company that sells life insurance policies.[3]  On September 24, 2014, Plaintiff purchased two term life insurance policies numbered AT10081020 and AT10081030 ("the Policies") from Defendant to insure the life of one of Plaintiff's principals.[4]  The relevant terms of the Policies are identical; both had a term of five years and provided Plaintiff with the option to convert them into permanent insurance.[5]  The conversion option was only available before the end of the five-year conversion period and required submission of a written request.[6] The conversion period's end date was September 24, 2019 ("the Conversion Deadline").[7]  Plaintiff did not request conversion of the Policies until November 26, 2019, and Defendant denied the request as untimely.[8]   Plaintiff alleged that it missed the

---

[3]Original Petition, Exhibit 2 to Notice of Removal, Docket Entry No. 1-2, p. 3 ¶¶ 6-7.

[4]<u>Id.</u> at 3-4 ¶ 7.

[5]<u>Id.</u> at 4 ¶ 8; Level Premium Term Life Insurance Policy No. AT10081020 ("Policy No. AT10081020"), Exhibit 1 to Defendant's 12(c) Motion, Docket Entry No. 3-1, pp. 4, 11; Level Premium Term Life Insurance Policy No. AT10081030 ("Policy No. AT10081030"), Exhibit 2 to Defendant's 12(c) Motion, Docket Entry No. 3-2, pp. 4, 11.

[6]Policy No. AT10081020, Exhibit 1 to Defendant's 12(c) Motion, Docket Entry No. 3-1, pp. 4, 12.; Policy No. AT10081030, Exhibit 2 to Defendant's 12(c) Motion, Docket Entry No. 3-2, pp. 4, 11.

[7]Policy No. AT10081020, Exhibit 1 to Defendant's 12(c) Motion, Docket Entry No. 3-1, p. 4; Policy No. AT10081030, Exhibit 2 to Defendant's 12(c) Motion, Docket Entry No. 3-2, p. 4.

[8]Original Petition, Exhibit 2 to Notice of Removal, Docket Entry No. 1-2, p. 4 ¶ 9.

Conversion Deadline because Defendant regularly provided notice when premium payments were due, creating a reasonable expectation that it would send written notice of any deadline, but failed to send notice of the Conversion Deadline.[9]

On June 10, 2020, Plaintiff brought suit against Defendant in state court alleging breach of contract and breach of the duty of good faith and fair dealing.[10]  Defendant removed the action to this court on the basis of diversity jurisdiction on July 14, 2020.[11] On the same day, Defendant filed its 12(c) Motion for judgment on the pleadings.[12]

On August 24, 2020, the court granted Defendant's 12(c) Motion.[13]  The court found that the Policies unambiguously did not require Defendant to provide notice of the Conversion Deadline, and thus the parties' post-contractual conduct was not relevant to determining the intent of the parties as expressed by the Policies.[14]  The court also found that Plaintiff's practice of sending regular notices that the annual payments were due did not establish the existence of an implied contract to modify the

---

[9]Id. at 4-5 ¶¶ 9-11.

[10]Id. at 2 and 6-7.

[11]Notice of Removal, Docket Entry No. 1, pp. 1-2.

[12]Defendant's 12(c) Motion, Docket Entry No. 3.

[13]Memorandum Opinion and Order, Docket Entry No. 13.

[14]Id. at 8.

Policies and require advance notice of the Conversion Deadline.[15] The court therefore concluded that Defendant did not breach its contracts with Plaintiff by failing to provide notice of the Conversion Deadline, and that Defendant was entitled to judgment on the pleadings on Plaintiff's breach of contract claim.[16]

The court also held that Defendant did not breach its duty of good faith and fair dealing when it cancelled the Policies.[17] Plaintiff never alleged any extreme conduct by Defendant or any injury independent of the expiration of the Policies, and there was no extra-contractual duty to provide the insured notice of a policy's expiration.[18]

The court noted that Plaintiff had not sought leave to amend or suggested the existence of any facts that could save its claims.[19] Concluding that Plaintiff had pled its best case and that amendment of the pleadings would be futile, the court found dismissal of the action and Plaintiff's claims to be appropriate.[20] On September 14, 2020, Plaintiff moved to vacate the judgment and amend the pleadings.[21] Defendant filed its response in opposition

---

[15]Id. at 9.

[16]Id.

[17]Id. at 10.

[18]Id. at 11.

[19]Id.

[20]Id. at 11-12.

[21]Plaintiff's Motion, Docket Entry No. 15.

to Plaintiff's Motion on October 5, 2020.[22]  Plaintiff filed a reply
in support of its motion on October 9, 2020.[23]

## II.  <u>Standard of Review</u>

"When a district court dismisses an action and enters a final
judgment, however, a plaintiff may request leave to amend only by
either appealing the judgment, or seeking to alter or reopen the
judgment under Rule 59 or 60."  <u>Rosenzweig v. Azurix Corp.</u>, 332
F.3d 854, 864 (5th Cir. 2003).

Under Rule 59(e) of the Federal Rules of Civil Procedure, a
motion to alter or amend a judgment must be filed no later than 28
days after the entry of the judgment.  Plaintiff filed its motion
21 days after the court entered its Final Judgment.[24]

Defendant argues that the court should apply the Rule 59(e)
standard to Plaintiff's Motion.[25]  Plaintiff argues, and the court
concludes, that the court should evaluate its motion under the
Rule 15(a) standard.[26]  "Where a district court has entered a
judgment on the pleadings and the plaintiff moves under Rule 59(e)

---

[22]Defendant's Response to Plaintiff's Motion to Vacate Judgment
and Grant Leave to Amend ("Defendant's Response"), Docket Entry
No. 16.

[23]Plaintiff's Reply in Support of Motion to Vacate Judgment and
Grant Leave to Amend ("Plaintiff's Reply"), Docket Entry No. 17.

[24]Plaintiff's Motion, Docket Entry No. 15.

[25]Defendant's Response, Docket Entry No. 16, p. 3 ¶ 8.

[26]Plaintiff's Motion, Docket Entry No. 15, p. 4.

to vacate the judgment and amend the complaint, the court should analyze the motion under the Rule 15(a) standard." <u>DeGruy v. Wade</u>, 586 F. App'x 652, 655-56 (5th Cir. 2014) (citing <u>Rosenzweig</u>, 332 F.3d at 864; <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 594, 597 n.1 (5th Cir. 1981)).

The distinction matters because the standard of review under Rule 15(a) "evinces a bias in favor of granting leave to amend." <u>Rosenzweig</u>, 332 F.3d at 863 (quoting <u>Martin's Herend Imports v. Diamond & Gem Trading</u>, 195 F.3d 765, 770 (5th Cir. 1999)). By contrast, the Rule 59(e) standard treats a post-judgment motion for leave to amend as "an extraordinary remedy that should be used sparingly." <u>Templet v. HydroChem Inc.</u>, 367 F.3d 473, 479 (5th Cir. 2004) (internal quotations and citations omitted).

Defendant correctly observes[27] that a "post-judgment motion for leave to amend must be treated as a motion under Rule 59(e), not Rule 15(a), as Rule 59(e) governs the amendment of judgments." <u>Kinder Morgan, Inc. v. Crout</u>, 814 F. App'x 811, 815 (5th Cir. 2020), reh'g denied (June 17, 2020) (quoting <u>Rosenzweig</u>, 332 F.3d at 863). But Defendant ignores crucial surrounding language from <u>Kinder Morgan</u>, in which the Fifth Circuit stated that when, as here, an action is dismissed on the pleadings, "the considerations for a Rule 59(e) motion are governed by Rule 15(a)." <u>Id.</u> (quoting <u>Rosenzweig</u>, 332 F.3d at 864). The <u>Rosenzweig</u> decision, which the

---

[27]Defendant's Response, Docket Entry No. 16, p. 3 ¶ 8.

Fifth Circuit cited favorably in <u>Kinder Morgan,</u> in turn cites the following language from <u>Dussouy,</u> 660 F.2d at 597 n.1.

> Where judgment has been entered on the pleadings, a holding that the trial court should have permitted amendment necessarily implies that judgment on the pleadings was inappropriate and that therefore the motion to vacate should have been granted. Thus the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a).

Accordingly, the court will apply Fed. R. Civ. P. 15(a) to Plaintiff's Motion.

Rule 15(a) provides that "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, leave to file an amended complaint "is by no means automatic." <u>Wimm v. Jack Eckerd Corp.,</u> 3 F.3d 137, 139 (5th Cir. 1993). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." <u>United States ex rel. Steury v. Cardinal Health, Inc.,</u> 625 F.3d 262, 270 (5th Cir. 2010) (citing <u>Foman v. Davis,</u> 83 S. Ct. 227, 230 (1962)).

### III.  <u>Analysis</u>

Plaintiff seeks to vacate the August 24, 2020, Memorandum Opinion and Order on the grounds that Plaintiff can allege additional facts permitting recovery under the doctrine of "waiver by custom."[28]  Under this doctrine an insurer is estopped from

---

[28]Plaintiff's Motion, Docket Entry No. 15, p. 5.

enforcing a policy provision if the insurer's conduct has led the insured to form a reasonable expectation that the provision would not be enforced.[29]  The relevant "policy provision" here is the five-year Conversion Deadline.   Plaintiff asserts that "[Defendant]'s habit of providing advance notice of premium due dates and accompanying payment forms, along with the policies' requirement that conversion requests be made on written forms provided by [Defendant]," gave rise to Plaintiff's "reasonable expectation" that Defendant would provide advance notice of the Conversion Deadline and an accompanying conversion form.[30]  Because Defendant provided neither advance notice nor a conversion form, Plaintiff contends that Defendant is estopped from enforcing the deadline, and Defendant's refusal to accept the conversion is a breach of contract and good faith.[31]

## A.   Undue Delay

Plaintiff writes that "[a]fter the Court entered judgment dismissing [Plaintiff's] claims, [its attorney] diligently performed additional factual and legal research to see if there were any other potential legal bases for recovery."[32]  Plaintiff argues that it has caused no undue delay because it filed its post-

---

[29] _Id._ at 6.

[30] _Id._

[31] _Id._

[32] _Id._ at 8.

judgment motion "within the timeline provided by Rule 59."[33]  Yet as Plaintiff has correctly argued, it is not Rule 59 but Rule 15(a) that must govern the court's analysis of Plaintiff's Motion.[34]

"Although Rule 15(a) contains no time limit for permissive amendment, at some point, time delay on the part of a plaintiff can be procedurally fatal." <u>Whitaker v. City of Houston, Texas</u>, 963 F.2d 831, 836 (internal quotations and citation omitted).  In such a situation, the plaintiff must meet the burden of showing that the delay was due to "oversight, inadvertence, or excusable neglect," a burden which properly shifts to the party seeking to amend where apparent lack of diligence exists.  <u>Id.</u> (quoting <u>Gregory v. Mitchell,</u> 634 F.2d 199, 203 (5th Cir. 1981)).  In <u>Whitaker</u> the Fifth Circuit held that a district court was within its discretion in denying a plaintiff post-dismissal leave to amend because the plaintiff's delay in seeking amendment showed that he had not been diligent in prosecuting his case. 963 F.2d at 837.  The Fifth Circuit stated that "in the eleven months during which [defendant's] dismissal motion was pending before the district court, [plaintiff] never sought leave to amend his complaint but instead stood by its sufficiency." <u>Id.</u>

Although there is no set "point" at which delay becomes "fatal" within the meaning of <u>Whitaker,</u> courts commonly examine a

---

[33]<u>Id.</u> ¶ 1.

[34]<u>Id.</u> at 4.

movant's diligence when evaluating the timeliness of proposed amendments. Where a movant was aware of the facts supporting the proposed amendment but failed to include those facts in the original complaint, such failure may give rise to an inference that the movant lacked diligence. <u>Mitsubishi Aircraft International, Inc. v. Brady</u>, 780 F.2d 1199, 1203 (5th Cir. 1986) (stating that failure to urge a claim which is "usually apparent at the outset of a case . . . strongly suggests either a lack of diligence . . . or a lack of sincerity."). Such lack of diligence can be fatal even where it does not suggest bad faith or dilatory motive. <u>See, e.g.</u>, <u>Rhodes v. Amarillo Hospital Dist.</u>, 654 F.2d 1148, 1154 (5th Cir. 1981) (movant's retention of a new attorney "able to perceive or draft different or more creative claims from the <u>same set of facts</u>" was no excuse for the late filing of an amended complaint) (emphasis added); <u>Layfield v. Bill Heard Chevrolet Co.</u>, 607 F.2d 1097, 1099 (5th Cir. 1979), <u>cert. denied,</u> 100 S. Ct. 2161 (1980) (district court did not abuse discretion in denying leave to amend where "all of the facts relevant to the proposed amendment were known to the [movant] at the time she filed her original complaint").

The facts on which Plaintiff's proposed amendment is based — that Defendant sent Plaintiff notice of premium deadlines along with payment forms — were known to Plaintiff when it filed its Original Petition. Plaintiff asserts that it simply "did not appreciate the potential applicability of the 'waiver by custom'

-10-

theory" at the time of its original pleading, and thus "[t]here is no basis to infer that [Plaintiff's] request for leave here is motivated by bad faith or a desire for delay."[35]  But this does not explain why Plaintiff did no further research after Defendant filed its Rule 12(c) Motion.  At that point, Plaintiff was on notice that the sufficiency of its pleadings was being questioned.  Yet, Plaintiff stood by its claim, sought no amendment, and made the conscious decision not to do additional research.  This conscious decision is not the same as "oversight, inadvertence, or excusable neglect."  See Whitaker, 963 F.2d at 836.  Like the plaintiff in Whitaker, Plaintiff here stood by the sufficiency of its pleadings even as the district court scrutinized the pleadings.  And like the Plaintiff in Whitaker, Plaintiff has demonstrated a lack of diligence sufficient to deny leave to amend.

In reviewing the timeliness of a motion to amend, delay alone is insufficient:  "The delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court." North Cypress Medical Center Operating Company, Limited v. Aetna Life Insurance Company, 898 F.3d 461, 478 (5th Cir. 2018) (quoting Mayeaux v. Louisiana Health Service and Indemnity Co., 376 F.3d 420, 426 (5th Cir. 2004)).  Prejudice can be found where movant seeks amendment only after nonmovant's filing of a dispositive motion.  See Grant v. City of Houston, 625 F. App'x 670, 679-80

---

[35]Plaintiff's Motion, Docket Entry No. 15, p. 8.

(5th Cir. 2015) ("Because the district court would have needed to consider another round of dispositive motions on [movant's] newly-added claims, the defendants, to their prejudice, would have incurred additional expenses due to [movant's] delay.").

By deliberately waiting to research alternative grounds of recovery until after the court granted Defendant's 12(c) Motion, Plaintiff has caused undue delay. The sufficiency of Plaintiff's pleadings could and should have been resolved in one round of motions, but Plaintiff's delay has required Defendant and this court to engage in a wasteful second round. If such prejudice were the result of excusable oversight or neglect, it might not warrant denial of leave to amend. But because it is the result of Plaintiff's lack of diligence, this prejudice warrants denial.

## B. Futility

Defendant argues that Plaintiff's proposed amendment would be futile because (a) the new allegations are virtually indistinguish-able from those already dismissed by the court[36] and (b) Plaintiff's "waiver by custom" theory is not supported by Texas law.[37] Plaintiff argues that its proposed amendment is not futile because (a) the new claims contain newly alleged facts[38] and (b) Defendant

---

[36]Defendant's Response, Docket Entry No. 16, pp. 5-6 ¶ 15.

[37]Id. at 7 ¶ 19.

[38]Plaintiff's Reply, Docket Entry No. 17, pp. 5-6 ¶ 2.

takes an impermissibly narrow view of Texas law on "waiver by custom."[39]

A district court may deny a post-judgment motion seeking leave to amend a complaint if the amendment sought would be futile. Foman, 83 S. Ct. at 230. "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." North Cypress, 898 F.3d at 478 (citing Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n, 751 F.3d 368 (5th Cir. 2014). Thus, a proposed amendment is futile unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id. at 1949. When ruling on a motion for leave to amend, the court should consider "whether the amendment adds substance to the original allegations." Waddleton v. Rodriguez, 750 F. App'x 248, 257 (5th Cir. 2019) (quoting Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982)).

Defendant argues that the allegations in Plaintiff's proposed amendment "would be virtually indistinguishable from those already dismissed by the Court."[40]  Plaintiff responds that the proposed

---

[39]Id. at 5 ¶ B and 7 ¶ 4.

[40]Defendant's Response, Docket Entry No. 16, pp. 5-6 ¶ 15.

-13-

amendment is based on facts never before alleged — that (1) the Policies required Defendant to provide a policy conversion form to Plaintiff, and (2) Defendant never provided such a form.[41] Although these facts were not alleged in Plaintiff's Original Petition, that does not mean that they add substance to the original allegations, or that the new facts are sufficient to state a claim to relief that is plausible on its face.

Plaintiff argues that by providing payment forms along with advance notice of premium deadlines, Defendant established a course of conduct that now estops it from enforcing the Conversion Deadline, since Defendant provided neither advance notice of the deadline nor a conversion form.[42]  In the sole case Plaintiff cites to support its theory, <u>Southland Life Ins. Co. v. Lawson,</u> 153 S.W.2d 953, 954 (Tex. 1941), a life insurance company refused to pay the beneficiary of a deceased insured on grounds that the insured had missed a premium payment.  In response, the beneficiary contended that the "unpaid" premium had in fact "been timely tendered to the company's local agent . . . that he had refused to accept it, and that therefore the company was estopped to claim a lapse of the policy for non-payment of such premium, and had waived the payment thereof." <u>Id.</u>  The beneficiary argued that it had been the company's custom to accept premium payments through

---

[41]Plaintiff's Reply, Docket Entry No. 17, pp. 5-6 ¶ 2.

[42]Plaintiff's Motion, Docket Entry No. 15, pp. 5-6 ¶ 2.

-14-

this local agent, and therefore the company had waived by custom the contractual obligation to pay such premiums at the company's home office.  Id. at 956.

The Texas Supreme Court recognized "waiver by custom" as a valid theory of recovery, writing that "when an insurance company has once waived, by custom, the . . . contractual obligations of its insurance contract with a policyholder, with reference to the payment of premiums, it cannot thereafter abrogate such waiver and enforce its insurance contract."  Id. at 956.  In such instances, the court held, "the insurance company will not be permitted to stand on the insurance contract, where to do so would operate as a fraud on the insured or result in an injustice to him."  Id. at 957.

But because the beneficiary could not show that a "fraud" or "injustice" would result if the insurance company were allowed to stand on the contract, the court ultimately sided with the insurance company.  Id.  The court held that even if the company had waived the requirement that premiums be paid at its home office, the agent's refusal to accept the last premium payment constituted termination of that custom while leaving the beneficiary "ample time, and time to spare" to pay the premium at the home office in compliance with the policy.  Id.  "No fraud or injustice is occasioned by enforcing the contract," the court wrote, "because [the beneficiary] still had thirty-three days to pay the premium as in the contract provided."  Id.

-15-

The facts in this case are less favorable to Plaintiff than they were to the beneficiary in Lawson.  In Lawson there was an obvious nexus between the "custom" established by the insurer's conduct and the contractual obligation that was purportedly being "waived."  There, the contractual obligation at issue was the insured's obligation to pay premiums to the insurer's home office.  The insurer arguably waived that condition by customarily accepting payment at a different office.

In the present case, Plaintiff argues that Defendant's "custom" of providing advance notice of premium payment deadlines along with payment forms "waives" Defendant's ability to enforce the Conversion Deadline because Defendant did not provide advance notice of the Deadline and did not send Plaintiff the conversion form.[43]  In Lawson both the insurer's "custom" and the contractual obligation purportedly "waived" related directly to the question of where premium payments should be paid.  See Lawson 153 S.W.2d at 956.  Here, the "custom" relates to premium payments, while the obligation to be "waived" relates to another matter entirely:  the conversion of insurance policies from term to permanent.

Moreover, even if this connection were sufficient to justify application of the "waiver by custom" theory, Plaintiff fails to assert a plausible claim that allowing Defendant to rely on the language of the Policies would operate as "fraud" or "injustice."

---

[43]Plaintiff's Motion, Docket Entry No. 15, p. 6.

-16-

To prevail on a fraud claim, Plaintiff must show that "(1) [the defendant] made a material representation that was false; (2) it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) it intended to induce [the plaintiff] to act upon the representation; and (4) [the plaintiff] actually and justifiably relied upon the representation and thereby suffered injury." Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Co., 51 S.W.3d 573, 577 (Tex. 2001). Plaintiff's proposed amendment does not contain facts sufficient to state a plausible claim of fraud.

Plaintiff does not claim that Defendant made any knowing material misrepresentation. Plaintiff does not claim, for instance, that the Policies were unclear or deceptive about the date of the deadline, or that the deadline was moved, or even that Defendant failed to clearly notify Plaintiff of the deadline. Although Plaintiff alleges that conversion of the Policies required filing a form, and that the Policies provided that Defendant would send that form,[44] Plaintiff does not allege that the Policies required Defendant to send the form unsolicited, with no action on Plaintiff's part. Plaintiff simply does not allege fraud.

Nor do Plaintiff's allegations state a plausible claim that injustice would result if Defendant were allowed to stand on the Policies. Plaintiff does not explain how Defendant's practice of

---

[44]Plaintiff's Motion, Docket Entry No. 15, p. 6.

giving Plaintiff recurring reminders for recurring premium payment deadlines could have given rise to a reasonable expectation that Defendant would provide additional reminders for a static deadline of which Plaintiff already had ample notice.

Plaintiff's proposed amendment does not contain sufficient factual matter to state a claim to relief that is plausible on its face. See Iqbal, 129 S. Ct. at 1940. It is futile, and therefore need not be allowed. See Foman, 83 S. Ct. at 230. Plaintiff also committed undue delay by waiting to conduct the research that underlies this proposed amendment until after its original claims were dismissed with prejudice. See id. For both reasons Plaintiff's Motion for leave to amend will be denied.

Plaintiff's Motion to Vacate Judgment and Grant Leave to Amend (Docket Entry No. 15) is **DENIED**.

**SIGNED** at Houston, Texas, on this 28th day of October, 2020.

_____

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-18-